UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PINKUS RAIZIN, )<br>    Petitioner, )<br>vs. )<br>CRAIG FARWELL, *et al.*, )<br>    Respondents. )<br>_____ ) | 3:04-cv-0115-JCM-VPC<br><br>**ORDER** |

**I. Introduction**

This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by Pinkus Raizin, a Nevada prisoner. The action comes before the court with respect to its merits. The court will deny the petition.

**II. Facts and Procedural Background**

On August 6, 2001, the state charged petitioner with six counts of sexual assault with a child under the age of fourteen and two counts of lewdness with a child under the age of fourteen for offenses committed against his grandchildren. Exhibit 4.[1] After a preliminary hearing, petitioner

---

[1] The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in support of their motion to dismiss, and are located in the record at docket #9. The exhibits cited in this order in the form "Petitioner's Exhibit ___," are those filed by petitioner in support of his reply to respondent's answer to his petition, and are located in the record at docket #26.

entered into a guilty plea to two counts of sexual assault of a minor under sixteen years of age and one count of lewdness with a child under the age of fourteen.  Exhibit 5.   The state dropped the other charges and filed an amended information to reflect the plea agreement.  Exhibit 6.  On December 4, 2001, the district court canvassed the petitioner with respect to the plea and accepted the plea.  Exhibit 7.  The petitioner and the state stipulated that petitioner would receive two concurrent terms of twenty years in prison with parole eligibility after five years for counts I and II, the sexual assault charges, and a concurrent term of life imprisonment with parole eligibility after ten years for the third count.  Exhibit 5.

Prior to sentencing petitioner sent a letter to the district court asking to withdraw his plea as he was of the understanding that he would receive only probation.  Petitioner's Exhibit's 17 and 18.  Petitioner's new defense attorney investigated the matter and filed two declarations based on discussions with petitioner's family and prior defense counsel.  Petitioner's Exhibit 20.  Petitioner's family stated that they understood petitioner would not receive probation and would instead receive a ten to life sentence.  *Id.*  Furthermore, prior defense counsel stated that she read the whole plea agreement to petitioner, answered all of his questions and never suggested that petitioner would only receive probation.  *Id.*  The trial court denied petitioner's motion to withdraw plea.  Petitioner's Exhibit 21.

Consistent with the plea agreement defense counsel did not ask for probation at the sentencing hearing.  *Id*.  The district court sentenced petitioner on February 6, 2002, to the agreed upon sentences.  *Id.*  A judgment of conviction was entered on February 25, 2002.  Exhibit 8.  Petitioner did not file a direct appeal.

Petitioner filed his state petition for habeas corpus relief on September 19, 2002. Exhibit 10. Petitioner raised three claims for relief: (1) trial counsel was ineffective for advising and permitting petitioner to sign the plea when the amended information altered the dates for counts I and II to reflect false dates for the offenses and thus prejudiced the outcome as petitioner may be subject to future prosecution for the offenses against the victim for the original dates; (2) trial

counsel was ineffective for allowing petitioner to enter into a guilty plea for the lewdness charge when the acts committed do not constitute the offense charged and (3) trial counsel was ineffective for advising petitioner not to say anything at sentencing and for failing to have petitioner examined by a psychologist so that the court could consider probation as a possible sentence. Exhibit 10.

After receiving a response and reply, the trial court denied the petition for writ of habeas corpus without holding an evidentiary hearing. Exhibits 11, 12 and 13. Petitioner appealed the district court's denial of his petition. Exhibit 14; Petitioner's Exhibit 34. On December 30, 2003, the Nevada Supreme Court affirmed. Exhibit 9.

The Nevada Supreme Court held that the lower court did not err in denying petitioner's first claim as he specifically waived any defects in the amended information, and the state's ability to charge petitioner with future crimes was a collateral consequence of the plea that does not render the plea involuntary and unknowing. *Id.* at 3-4. Furthermore the court held that the record refuted petitioner's second claim as he told the district court during the plea colloquy that he had discussed the elements of the crimes with counsel. *Id.* at 4-5. Finally, the court determined that the district court did not err in denying claim three as petitioner had not shown how his potential testimony and a psychological examination would have changed the outcome of sentencing. *Id.* at 5-6. The court denied rehearing on February 10, 2004. Remittitur issued on March 11, 2004.

The instant federal habeas action was initiated on March 10, 2004 (docket #1) and the federal habeas petition was filed on March 22, 2004 (docket #4). Respondents' moved to dismiss the petition for failure to state claims cognizable in a federal habeas petition (docket #8). The court denied that motion (docket #17).

On March 24, 2005, respondents filed an answer to the petition (docket #18). After appointment of counsel, petitioner filed a reply on November 5, 2007, along with supporting exhibits (docket #26).

**III. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal

standard for the court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer v. Andrade*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The unreasonable application clause "requires the state court decision to be more than incorrect or erroneous"; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409). *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

In determining whether a state court decision is contrary to, or an unreasonable

4

application of, federal law, this Court looks to a state court's last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).

**IV. Discussion**

    **A. Ground One**

In his first claim petitioner argues trial counsel was ineffective, in violation of his Sixth Amendment rights, for advising and permitting him to enter into a plea where the state altered the offense dates in the amended information. Specifically petitioner contends that the original information charged counts I and II as having occurred between April 1991 and April 1993 and the amended information charged the counts as occurring between October 1997 and February 2001. Petitioner alleges that he is now subject to double jeopardy as the state can charge him in the future for the offenses that allegedly occurred between 1991 and 1993.

To prove ineffective assistance of counsel, petitioner must show (1) that counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of professionally competent assistance and (2) the deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In the case of a guilty plea a petitioner must demonstrate that "but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner's first claim is belied by the record. The written plea agreement, signed by petitioner, states that petitioner waived any defects in the dates contained in the amended information. Exhibit 5. Furthermore, during the plea colloquy held on December 4, 2001, defense counsel again informed the court petitioner waived any defects in the record with respect to the date alleged for counts I and II. Exhibit 7 at 2. Petitioner did not object to this waiver at any point, and later told the state district court that he understood the charges, had understood the written agreement, signed the plea and wished to enter into the guilty plea agreement. *Id.* at 3-5.

The Nevada Supreme Court, in affirming the district court's denial of the state

petition for writ of habeas corpus, noted that the petitioner waived the defects in information, and found that trial counsel was not ineffective. The Court's determination that counsel was not deficient is not an unreasonable application of *Strickland* and *Hill*, and ground 1 must be denied.

**B. Ground Two**

In petitioner's second claim, related to ground one, he asserts the defects in the information and their waiver rendered his plea involuntary and unknowing contrary to the Fourteenth Amendment of the United States Constitution, as he was not informed that he could be subject to a subsequent prosecution for the same offenses contained in counts I and II. Petitioner's second claim also must be denied, as the state court's determination that petitioner's plea was voluntary and intelligent was not an unreasonable application of federal law.

To satisfy the United States Constitution, a guilty plea must be voluntary and intelligent. *See*, *e.g.*, *Hill v. Lockhart*, 474 U.S. 52 (1985); *Boykin v. Alabama*, 395 U.S. 238 (1969). If a petitioner challenges a guilty plea, a court must determine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). As the court previously noted in relation to ground one, petitioner informed the court during the plea colloquy that he understood the plea agreement, the charges, possible defenses and the sentence. Exhibit 7. The Nevada Supreme Court found that the waiver of the defects in the information did not render petitioner's plea involuntary as a subsequent prosecution would be a collateral consequence of the plea.

The state court did not unreasonably apply federal law to petitioner's claim. In denying this claim the Nevada Supreme Court relied upon *Nollette v. State*, 46 P.3d 87 (Nev. 2002) (stating a defendant need not be advised of collateral consequences of a plea, which do not affect the length or nature of the punishment, and are dependent on a court's discretion, a defendant's future conduct or the discretion of a government agency).

The AEDPA standards that govern this federal habeas corpus action note that a court must look not to state precedent but to federal or United States Supreme Court precedent in

6

determining whether the state court's determination was unreasonable. *See* 28 U.S.C. §2254(d). However, a state court is not required to cite federal or United State Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2003) (per curiam).

The Nevada Supreme Court's conclusion was not an objectively unreasonable application of federal law. Similar to *Nollette*, federal courts have held that a defendant does not have to be advised of every possible collateral consequence of entering a plea. *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988). Collateral consequences are those that are "contingent upon action taken by an individual or individuals other than the sentencing court-such as another government agency or the defendant himself." *United States v. Littlejohn,* 224 F.3d 960, 965 (9th Cir. 2000). *See also United States v. Amador-Leal*, 276 F.3d 511, 514 (9th Cir. 2002). Facing a subsequent prosecution by the state district attorney would be a collateral consequence, as such a prosecution is dependant upon another governmental agency's discretion. Ground 2 will be denied.

**C. Grounds Three and Four**

In his third claim petitioner contends that his Sixth Amendment rights were violated due to trial counsel's ineffectiveness in allowing him to enter into a guilty plea to count III where the evidence does not demonstrate that the offense was committed. Petitioner argues that neither the state nor defense counsel developed or presented any evidence that the petitioner had the requisite intent required for the charge of lewdness with a child under the age of fourteen. Related to this claim is ground four, in which petitioner alleges counsel was ineffective for failing to discuss with him the defenses to count III, namely the defense of no intent.

The Nevada Supreme Court did not unreasonably apply established federal law in denying these claims. Petitioner's arguments that counsel was deficient are refuted by the record. Petitioner signed the plea agreement, which stated that he understood he was waiving his right to have the state prove, beyond a reasonable doubt, each element of the charged offenses. Exhibit 5. Therefore, even if there were a question as to proof of the requisite intent for count III, petitioner

waived his right to have the state prove this element to a jury.  Furthermore, the plea agreement stated that petitioner discussed the elements of each charged offense with counsel, and discussed all defenses to the crimes that would be in his favor. *Id.*  Moreover, during the plea colloquy petitioner told the court he understood each of the charges and talked to his attorney about the elements of the crimes and possible penalties.  Exhibit 7.

The state court determined there was no error in the trial court's order denying these claims.  The Nevada Supreme Court's decision was not objectively unreasonable, as petitioner did not show any deficiency on the part of counsel under *Strickland* or *Hill*.  This court will deny grounds 3 and 4.

**C. Ground Five**

In his fifth and final claim petitioner argues that trial counsel was ineffective, in violation of the Sixth Amendment, for advising him not to say anything during the sentencing hearing, and for failing to order a psychological examination, so that the court could consider probation as a sentence.  The crux of petitioner's claim is that had counsel provided mitigating circumstances, the court in all likelihood would have sentenced him to probation rather than a prison sentence.  The Nevada Supreme Court denied this claim, stating that petitioner failed to show how his testimony and the results of a psychological exam would have resulted in a sentence of probation.

Petitioner cannot show that any supposed deficiency on the part of counsel prejudiced the outcome of the proceedings.  The plea agreement stated that the parties stipulated to a sentence of 20 years in prison with parole eligibility after 5 years for counts I and II, and to a sentence of life with the possibility of parole after 10 years for count III.  Exhibit 5.  Furthermore, the defendant stipulated at the plea hearing that he would not receive probation.  Exhibit 7.  The trial court also considered petitioner's motion to withdraw plea prior to sentencing, in which he alleged he was under the impression he would receive probation.  Petitioner's Exhibit 17 and 18.  The trial court denied that motion, determining no evidence was present to show petitioner had been promised a sentence of probation and in fact, the evidence pointed to the fact that petitioner and his family

understood he would receive a prison sentence. Petitioner's Exhibit 21.

The state court did not unreasonably apply federal law in denying this claim. Trial counsel was likely not deficient under *Strickland* or *Hill* for failing to argue or provide mitigating circumstances so that the court could consider a sentence of probation. The parties stipulated that petitioner would not receive a sentence of probation. Petitioner also cannot show how any deficiency prejudiced the outcome of the proceeding, as he stipulated to a sentence that would not include probation. Therefore, the court will deny ground 5.

## V. Certificate of Appealability

In order to proceed with an appeal from this court, petitioner must receive a certificate of appealability from either this court or the Ninth Circuit Court of Appeals. 28 U.S.C. § 2253(c)(1). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.* The Supreme Court has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253© is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet that standard. Accordingly, the court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that petitioner's petition for a writ of habeas

9

corpus (docket #4) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED** a certificate of appealability.

Dated this 14th day of April, 2008.

_____
UNITED STATES DISTRICT JUDGE